356 F.2d 874
 BRUNETTO CHEESE MANUFACTURING CORP., C. & F. Cheese Distributors, Inc., Falcone Dairy Products, Inc., J. J. Giammalvo, Inc., M. Maggio Co., Pollio Dairy Products Corp., Sorrento Cheese Company, Inc., Sunbury Cheese Company, Inc., and Italian Fresh Cheese Manufacturers Association, Inc., Petitioners,
v.
Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare of the United States, Respondent.
 No. 131.
 Docket 29567.
 United States Court of Appeals Second Circuit.
 Argued January 4, 1966.
 Decided February 4, 1966.
 
 Martin A. Fromer, New York City, for petitioners.
 Robert E. Kushner, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, William W. Goodrich, Asst. Gen. Counsel for Food and Drugs, Joanne S. Sisk, Atty., U. S. Dept. of Health, Education and Welfare, on the brief), for respondent.
 Before MOORE, SMITH and ANDERSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioners, fresh cheese manufacturers of the northeastern United States, and their trade association, seek review of an order of the Secretary of Health, Education, and Welfare under the Federal Food, Drug and Cosmetic Act, 21 U.S. C. § 341, promulgating definitions and standards of identity for Mozzarella, Scamorza, Part-skim Mozzarella and Part-skim Scamorza cheese. We find the order based on substantial evidence in the record and affirm the order.
 
 
 2
 The regulations establish standards of identity for the Mozzarella cheese manufactured by petitioners, and for a cheese manufactured by midwestern producers, which is also sold as Mozzarella, but which has a lower moisture content.
 
 
 3
 After a hearing on standards proposed by the National Cheese Institute, representing midwestern producers, the Commissioner issued tentative findings establishing two basic standards of identity, and using "mozzarella" as the name for petitioners' product, manufactured in the east, and "pizza cheese" for the low moisture product. The midwestern producers protested, on the grounds that the consuming public, which had previously purchased this product as Mozzarella, would be confused, that there were other uses for this cheese than for pizza, that other cheeses were used for pizza and that recipes in general circulation called for mozzarella cheese. The Commissioner altered the findings to adopt "Low-Moisture Mozzarella" as the name for the midwestern product.
 
 
 4
 Petitioners attack the choice of this name. The findings must be supported by substantial evidence, § 701(f) (3) of the Act, 21 U.S.C. § 371(f) (3); Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724 (1943). The court cannot substitute its judgment for that of the administrative agency if the findings are so supported. Under § 401 of the Act, 21 U.S.C. § 341, the Secretary is to promulgate regulations establishing a reasonable definition and standard of identity for a product, under the product's common or usual name so far as is practicable, "[w]henever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers."
 
 
 5
 While there was evidence to indicate that the two cheeses are different in color, taste, texture, and consistency, and it was not disputed that the eastern cheese was of earlier origin, and more closely resembles authentic Italian Mozzarella, there was also evidence that the consuming public identified as Mozzarella the midwestern product. Most of the midwestern producers included the name mozzarella in their labels. There was testimony that the midwestern cheese was marketed throughout the country and known as Mozzarella, and that due to its high moisture content and resultant perishability the eastern cheese was not marketed to any great extent outside the east. Yet the consuming public was not confined to the east.
 
 
 6
 Thus the Commissioner could find that the public knew as Mozzarella two different cheeses, and that there was a need for separate standards of identity. Accordingly he preserved the name Mozzarella for each, but added the description "low-moisture" to the midwestern product. The Act requires that the product when given standards be known by its "common or usual name so far as practicable." Thus the ultimate question is whether there was substantial evidence on the record to support the name chosen. Petitioners do not appear to disagree that common or usual name means that name by which the product is known to the community at large. United States v. Crescent-Kelvan Co., 164 F.2d 582 (3 Cir. 1948) (construing similar language in § 502(e) of the Act, 21 U.S.C. § 352(e)).
 
 
 7
 The fact that some midwestern producers labeled their product also as "pizza cheese" indicates more a recommended use than a name. There was substantial evidence that the consuming public identified the low-moisture product as Mozzarella. And as long as the name chosen is appropriate, it is no argument that the Commissioner rejected another name which is also appropriate. Columbia Cheese Co. v. McNutt, 137 F. 2d 576 (2 Cir. 1943). We cannot substitute our judgment for his. Since his finding is supported by substantial evidence the order is affirmed.